# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA
    Plaintiff,

v.                                            Case No. 03-CR-194

**BRIAN QUALLS**
    Defendant.

## SENTENCING MEMORANDUM

Defendant Brian Qualls pleaded guilty to conspiracy to distribute and possess with intent to distribute cocaine. 18 U.S.C. §§ 841(a)(1), (b)(1)(C) & 846. The pre-sentence report (PSR) calculated his base offense level ("OL") as 30 based on drug weight and his criminal history category ("CHC") as IV under the sentencing guidelines. However, because he had two prior drug trafficking convictions, the PSR designated defendant a career offender under U.S.S.G. § 4B1.1, which raised his base OL to 34 and his CHC to VI. Following a reduction for acceptance of responsibility, § 3E1.1, the imprisonment range was 188-235 months.[1] Neither side objected to these guideline calculations. However, defendant requested a non-guideline sentence of 108 months, while the government requested a sentence at the low end of the range.[2]

---

[1] Absent the career offender designation, defendant's range was 100-125 months.

[2] Both sides agreed that defendant qualified for an adjustment of the sentence to credit him for the discharged portion of a state sentence he was serving arising out of the same criminal conduct. See U.S.S.G. § 5G1.3(b).

## I. SENTENCING PROCEDURE

In imposing sentence, I consider the factors set forth in 18 U.S.C. § 3553(a), which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

My task is to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 960 (E.D. Wis. 2005). I typically group the § 3553(a) factors into three categories: the nature of the offense, the history of the defendant, and the needs of the public and any victims. I analyze each category and in so doing consider the specific statutory factors under § 3553(a), including the advisory guidelines. United States v. Ranum, 353 F. Supp. 2d 984, 989 (E.D. Wis. 2005).

## II. APPLICATION

**A.    Nature of Offense**

Defendant was involved in selling cocaine over a period of about three years. Although the overall conspiracy of which he was a member was large, with about 20 members, and moved over 150 kilograms of cocaine, defendant dealt solely with a single co-defendant, Darylvocia Greer, and not any of the others. He was in the second lowest tier as far as drug weight is concerned, with relevant conduct of 3.5 to 5 kg of cocaine. There was no indication that he possessed a weapon or engaged in any violence in connection with the offense. Neither was there evidence that he recruited anyone else to join the conspiracy. Rather, it appeared that he bought cocaine from Greer and had just a few regular customers of his own. Thus, although the offense was serious, it was not aggravated.

Further, when confronted by the police defendant admitted his activities, assisted officers in their search of his residence, and later provided the names of his customers and a previous source of cocaine.[3] In his post-arrest statement, defendant indicated that he was glad he was arrested because it removed a huge burden. He further stated that he had been doing positive things, trying to obtain his high school degree, and attempting to get out of the drug lifestyle.

**B.    Character of Defendant**

Defendant was 28 years old and had a serious criminal record. He was convicted of drug dealing in state court in 1995, 1999 and 2004, although the 2004 conviction was

---

[3] The government indicated that this information had not yet proven useful, entitling defendant to a motion under U.S.S.G. § 5K1.1.

3

considered "part of the instant offense."  See U.S.S.G. § 4A1.2(a)(1).  He had various loitering convictions suggesting further involvement in the drug trade, though these did not score criminal history points.  He also had a felony bail jumping conviction, as well as two pending criminal cases, hit & run of an occupied vehicle and felon in possession of a firearm.  He was at the time of sentencing serving an eight year state prison term on the latest drug case, to be followed by eight years of extended supervision, with a one year consecutive confinement term and two years of extended supervision on the bail jumping conviction.

Defendant had little employment record to speak of.  He reported several jobs, but the PSR writer was unable to confirm them.

Defendant also had a problem with marijuana abuse.  However, he was given a chance to deal with that problem while on parole on his second state drug case but was terminated from the program for poor attendance.

Defendant was not married but was in a long term relationship with Tionne Reed, who had positive things to say about him.  He had a nine year old child from a previous relationship and owed $22,694 in back child support.  Defendant appeared to be trying to maintain contact with his son, which is commendable, though, as he admitted, it is hard to be much of a father from prison.

On the positive side, defendant continued his efforts to obtain his HSED while incarcerated in the state prison system.  He was also taking computer classes and working as a janitor at New Lisbon Correctional Center.  This suggested that he was thinking about the future.

### C. Needs of Public

There was no evidence that defendant was physically dangerous. However, there was a clear risk of recidivism. There was also a need for a substantial period of confinement to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant. His educational or vocational training needs could be, and apparently were being met, in a confined setting. He failed in addressing his issues in the community. There was no restitution due.

### D. Consideration of Guidelines and Imposition of Sentence

The guidelines called for a term of 188-235 months, with an adjustment to award credit for time served under U.S.S.G. § 5G1.3(b). I concluded that, under all of the circumstances, this range was somewhat greater than necessary to satisfy the purposes of sentencing. However, I did not believe that the 108 month sentence defendant suggested was sufficient.

Defendant first noted that he was already serving a lengthy state sentence based in part on the same conduct. That was true, but the instant offense encompassed more conduct than did the state case, and defendant was under the guidelines entitled to an adjustment and a fully concurrent sentence to account for the overlap. See U.S.S.G. § 5G1.3(b) & cmt. n.2. I could not agree that the lengthy period of extended supervision that would follow defendant's release from state prison was sufficient to protect the public had I imposed the nine year sentence defendant requested. Defendant failed in the community before.

Neither did I believe it appropriate to impose a non-guideline sentence to avoid disparity with the two co-defendants who had already been sentenced. It was true that co-defendant Fred Mitchell, who received a 135 month sentence, had a higher drug weight, but he had no prior record and an otherwise pro-social background. This defendant, conversely, had a serious record and lacked Mitchell's employment record and other positive characteristics. Co-defendant Josiphus Wilder had both a lower drug weight and a less severe record, so his sentence of 84 months, the low end of the advisory guidelines, could not be compared to defendant's.

However, there were some positive aspects of defendant's case. Defendant's sincere expression of remorse, cooperation with the police[4] and his efforts to better himself suggested that he was thinking about the future. Further, the guidelines produced an extremely high sentence given defendant's peripheral involvement in this conspiracy. The guideline range was high because defendant qualified as a career offender. There may well be cases in which the career offender guideline creates sentences far greater than necessary, such as where the qualifying offenses are designated crimes of violence but really do not suggest a risk justifying such a sentence, fleeing and walk away escape cases, for instance. See, e.g., United States v. Rosas, 401 F.3d 843 (7th Cir. 2005). In the present case the priors were drug trafficking offenses, so I did not believe a significant reduction from the range was warranted. However, the two predicate offenses from 1995 and 1999 involved very small amounts (about 2 grams in the first case and less than ½

---

[4]The government objected to any sentence below the guideline range based on defendant's cooperation. I agreed that in this case such a reduction would not be appropriate absent a government motion. However, I did consider defendant's efforts to cooperate as a sign of positive character development.

6

gram in the second), and the sentences were 14 months and 20 months, respectively,[5] making the guideline range applicable to the instant offense a colossal increment. It is appropriate for a court, when considering the type of sentence necessary to protect the public and deter future misconduct, to note the length of any previous sentences imposed. Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend. Further, it is appropriate for a court considering the career offender guideline to analyze whether, under § 3553(a)(1), the guideline produces a sentence "reasonably related in severity to the level of sentence appropriate for the offense of current conviction." ABA Standards for Criminal Justice – Sentencing § 18-3.5 at 59-60 (3d ed. 1994). In the present case, I concluded that a sentence of 188 months, nearly 10 times higher than any previous, unrelated sentence, and nearly twice the otherwise applicable range, was greater than necessary. See id. at 63 ("The precipitous effect of a habitual offender statute with mandated additional penalties will seldom coincide with the more flexible scheme of presumptive sentences, and will introduce gross disparities into sentencing patterns and distortions into the policy objectives the sentencing agency is seeking to implement.").

      Therefore, I exercised my discretion to, in effect, reduce the sentence by slightly more than one level to 160 months. Under all of the circumstances, I found this sentence sufficient but not greater than necessary to satisfy the purposes of sentencing. This

---

[5]Defendant actually served about 22 months in prison on these two cases.

sentence hewed closely to the guidelines, thus avoiding unwarranted disparity, and also recognized that career offenders should receive substantial prison terms.

Defendant was entitled to a 20 month adjustment under § 5G1.3(b) to account for the discharged portion of the sentence in State of Wisconsin Case No. 03-CF-6133. The state sentence was imposed on February 3, 2004, a little over 16 months before the instant sentence, and the state judge gave him 107 days credit. Thus, I adjusted this sentence by 20 months, rounded off, to account for the time spent in state custody.

Therefore, I committed defendant to the custody of the Bureau of Prisons for 140 months to run concurrent to the sentence he was serving in State of Wisconsin Case No. 03-CF-6133. Based on his financial situation, I determined that defendant did not have the ability to pay a fine and thus waived the fine. Upon release, I ordered defendant to serve a six year term of supervised release, the conditions of which appear in the judgment.

**SO ORDERED**.

Dated at Milwaukee, Wisconsin, this ___ day of June, 2005.

_____
LYNN ADELMAN
District Judge